UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Lidia Taranov, by and through**
**Tatiana Taranov and Leonid Taranov,**
**Next Friends**

    v.     Case No. 21-cv-995-PB
         Opinion No. 2022 DNH 068

**Area Agency of Greater Nashua, a/k/a**
**Region VI Area Agency d/b/a**
**Gateways Community Services, Inc. et al.**

## MEMORANDUM AND ORDER

Lidia Taranov moves for reconsideration of my order approving the Magistrate Judge's recommendation to dismiss the claim that Gateways Community Services, Inc. violated Taranov's rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq. Because Taranov did not file a timely objection to the Report and Recommendation, I accepted it without detailing the reasons for my decision. See Fed. R. Civ. P. 72, advisory comm. notes (1983) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

Given that final judgment has not been rendered, I consider plaintiff's motion under Local Rule 7.2(d), which requires a motion for reconsideration to "demonstrate that the order was based on a manifest error of fact or law."

Reconsideration is "an extraordinary remedy which should be used sparingly." Fabrica de Muebles J.J. Alvarez, Inc. v. Inversiones Mendoza, Inc., 682 F.3d 26, 31 (1st Cir. 2012) (cleaned up).

The complaint alleges that Taranov received a variety of home-based services under New Hampshire's Medicaid Waiver program for individuals with acquired brain disorders. Gateways is a private nonprofit area agency that contracts with the State of New Hampshire to provide such services to eligible individuals, such as Taranov, within its geographic service area. Gateways eventually terminated a subset of Taranov's services: the so-called adult foster care services. In their place, Gateways offered to cover a substitute set of services that Taranov finds inadequate. Taranov alleges that Gateways discriminated against her because of her disability, in violation of the ADA. The Magistrate Judge recommended the dismissal of that claim because Gateways is not a public entity subject to the ADA. Taranov has demonstrated no error in that rationale, let alone plain error.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Act defines a "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other

2

instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." § 12131(1).

The question is whether Gateways, a private nonprofit corporation, falls within the scope of the definition of a "public entity" because it is an "instrumentality" of the State of New Hampshire.[1] Although the First Circuit has not yet answered this question, the vast majority of courts, including all circuits that have addressed the issue, have held that private contractors are not instrumentalities of state or local governments under the ADA. See, e.g., Phillips v. Tiona, 508 F. App'x 737, 754 (10th Cir. 2013); Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010); Maringo v. Warden, 283 F. App'x 205, 206 (5th Cir. 2008); Green v. New York, 465 F.3d 65, 79 (2d Cir. 2006). The Second Circuit in Green succinctly explained why the canons of statutory construction produce this outcome. Although the word "instrumentality" is ambiguous, a contextual reading reveals that it is best understood to refer to an entity created by the government. Green, 465 F.3d at 79. This meaning is informed by the list of words appearing alongside "instrumentality" in the statute. Id.; see Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961) (explaining canon of statutory construction noscitur a sociis, that a statutory term "gathers meaning from the words around it"); see also Antonin Scalia &

---

[1] Contrary to Taranov's suggestion, the other definitions of the term "public entity" clearly do not apply to Gateways.

3

Bryan A. Gardner, Reading Law: The Interpretation of Legal Texts 196 (2012) ("[T]he most common effect of the canon is . . . to limit a general term to a subset of all the things . . . that it covers."). As the court in Green explained, the defining characteristic of the "company" kept by "instrumentality"—namely, "department, agency, [and] special purpose district . . . of a State . . . or local government"—is that they are either a unit of a government entity or "a creature of the municipality or state whose ends it serves." 465 F.3d at 79. The Second Circuit concluded that a private hospital performing services pursuant to a contract with a municipality did not fit within this definition because it was "a parallel private entity." Id. Courts that have relied on this analysis have held, for example, that private prisons and private companies that contract with states to provide medical or employment services to inmates are not subject to the ADA. See Phillips, 508 F. App'x at 749 (collecting cases). I agree with the Second Circuit's reading of the ADA's text and conclude that the term "instrumentality" does not encompass private companies performing services under a government contract.

It is undisputed here that Gateways is a private nonprofit corporation that has contracted with the State of New Hampshire to administer services to eligible residents enrolled in the State's Medicaid Waiver program for individuals with acquired brain disorders. As the New Hampshire Supreme

4

Court has explained, area agencies such as Gateways "are the primary recipients of funds dispensed by DHHS for use in administering developmental services and programs, and as such, serve as the nucleus of services for individuals living in each service region." Petition of Sawyer, 170 N.H. 197, 199 (2017). Although area agencies are subject to State regulation and control, they are not mere creatures of the State. Instead, they are private corporations that, following a public selection process, are designated by the Commissioner of DHHS to perform a range of services for the recipients of the Medicaid Waiver program in their service region for a five-year period, in return for payment from the State. See generally N.H. Code Admin. R. He-M 505. Therefore, an area agency provides services pursuant to a contract with the State, much like the private hospital in Green or the private prisons in Phillips and Edison.

That the State delegates to area agencies the responsibility to provide services that the State otherwise would have to provide does not transform area agencies into instrumentalities of the State. As the court in Edison explained, even where a private entity contracts with the state "to perform a traditional and essential government function, it remains a private company, not a public entity." 604 F.3d at 1310. Structurally, Gateways remains a private, nonprofit corporation organized under the laws of New Hampshire.

Even when it is designated as an area agency by the State, its private status does not change.

But even if Taranov is correct that functionality should be considered, Gateways does not mirror a government unit. Although the State has outsourced certain functions to Gateways, the State remains involved in the operation of the Medicaid Waiver program and retains significant control over area agencies. See, e.g., N.H. Code Admin. R. He-M 505.03 (describing the role of area agencies and DHHS oversight); He-M 505.06 (specifying when DHHS Commissioner may revoke the designation of an area agency); He-M 505.07 (same for the suspension of an area agency's designation); He-M 505.08 (describing the redesignation process). The Tenth Circuit in Phillips relied on analogous functional differences to underscore why a private prison was not an instrumentality of the state. See 508 F. App'x at 751.

That area agencies fall outside the scope of the term "public entity" does not mean that Taranov has no recourse under the ADA. The Act's implementing regulations require the State to meet its own obligations not to discriminate on the basis of disability in the provision of services "directly or through contractual, licensing, or other arrangements." 28 C.F.R. § 35.130(b)(1); see also § 35.130(b)(3) (prohibiting both direct and indirect use of methods of administration that subject the disabled to discrimination based on disability). The State thus remains obligated to provide services in

compliance with the ADA even when it outsources some functions through contracts with private parties.

In sum, there is no merit to Taranov's argument that Gateways is a public entity subject to the ADA. Accordingly, the motion for reconsideration (Doc. No. 30) is denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

May 26, 2022

cc:     Counsel of record