## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Lidia Taranov, by and through**
**Tatiana Taranov and Leonid Taranov,**
**Next Friends**

      v.

Case No. 21-cv-995-PB
Opinion No. 2023 DNH 010

**Area Agency of Greater Nashua, a/k/a**
**Region VI Area Agency d/b/a**
**Gateways Community Services, Inc. et al.**

### MEMORANDUM AND ORDER

Plaintiff Lidia Taranov is a blind and cognitively disabled elderly woman enrolled in New Hampshire's Acquired Brain Disorders (ABD) Waiver program, a Medicaid program administered by the state's department of health and human services (DHHS). As part of the ABD Waiver program, DHHS contracts with private nonprofit "area agencies" to coordinate the provision of home and community-based care services to eligible individuals. Taranov has sued several DHHS officials, as well as Gateways Community Services Inc. (Gateways), the area agency that coordinates her ABD Waiver services, and its officials. The complaint alleges that defendants terminated a subset of Taranov's ABD Waiver services, the so-called adult foster care services, and in their place offered to cover a substitute set of services that Taranov finds inadequate, in violation of her federal statutory and

constitutional rights. The DHHS defendants have moved to dismiss the claims against them on ripeness grounds. Because Taranov's claims are ripe for judicial determination, I deny defendants' motion.

## I.    BACKGROUND

### A.    The ABD Waiver Program

The New Hampshire legislature has charged DHHS with establishing and coordinating "a comprehensive service delivery system for developmentally disabled persons," with the goal of "emphasiz[ing] community living." See N.H. Rev. Stat. Ann. § 171-A:1. DHHS has furthered this goal by creating the ABD Waiver program, a system through which New Hampshire residents with ABD may receive Medicaid-covered home and community-based services. See generally N.H. Code Admin. R. He-M 517–N.H. Code Admin. R. He-M 522.

The ABD Waiver program relies on a network of private nonprofit area agencies, designated and paid by the state, to perform a range of services for eligible individuals in their service region. See generally N.H. Code Admin. R. He-M 505. "Area agencies are the primary recipients of funds dispensed by DHHS for use in administering developmental services and programs, and as such, serve as the nucleus of services for individuals living in each service region." Petition of Sawyer, 170 N.H. 197, 199 (2017). The state, however, remains involved in the operation of the ABD Waiver program and retains

significant control over area agencies. See, e.g., N.H. Code Admin. R. He-M 505.03 (describing the role of area agencies and DHHS oversight); N.H. Code Admin. R. He-M 505.06 (specifying when the DHHS commissioner may revoke the designation of an area agency); N.H. Code Admin. R. He-M 505.07 (same for the suspension of an area agency's designation); N.H. Code Admin. R. He-M 505.08 (describing the redesignation process).

To obtain ABD Waiver services, an individual must first apply to the area agency in his or her service region. See N.H. Code Admin. R. He-M 522.04. If the area agency determines that the person has an ABD, it must so inform DHHS, which in turn must determine whether the person meets various other eligibility criteria. See N.H. Code Admin. R. He-M 522.05(h)(1); N.H. Code Admin. R. He-M 522.06(a). If DHHS determines that the person is eligible for Medicaid-covered home and community-based services, the area agency so notifies the individual. N.H. Code Admin. R. He-M 522.06(b)(1).

The area agency must create a "service agreement" for each enrolled individual. See N.H. Code Admin. R. He-M 522.11. This is a written agreement between the area agency and the individual (or the individual's guardian or representative) that "describes the services that [the] individual will receive." N.H. Code Admin. R. He-M 522.02(ah). The service agreement must be "renewed at least annually," N.H. Code Admin. R. He-M 522.11(n), and it must be "reviewed and revised . . . [w]hen the individual's

circumstances or needs change," N.H. Code Admin. R. He-M 522.11(o)(1).

Where warranted by the changed circumstances, the area agency may

terminate services otherwise provided for in the service agreement. See N.H.

Code Admin. R. He-M 522.16. If the area agency decides to terminate

services, it must send a termination notice to the individual at least 30 days

before the effective date of termination. N.H. Code Admin. R. He-M 522.16(f).

The termination notice must include "the reason for termination, the right to

appeal, and the process for appealing the decision." N.H. Code Admin. R. He-

M 522.16(g).

The individual may challenge the area agency's decision to terminate

services by filing an appeal with DHHS. See N.H. Code Admin. R. He-M

522.18. Upon receipt of an appeal, DHHS "assign[s] a presiding officer to

conduct a hearing or independent review" in accordance with its rules of

practice and procedure. N.H. Code Admin. R. He-M 522.18(f). If the

individual has requested a hearing on the appeal, DHHS rules provide that

"[c]urrent recipients, services, and payments shall be continued . . . until a

decision has been made." N.H. Code Admin. R. He-M 522.18(g)(1).

## B.   The Complaint

Taranov has an ABD and requires personal care and supervision

around the clock. She has participated in the ABD Waiver program since

March 2006. As part of the program, Taranov was receiving a variety of home

and community-based services through service agreements with Gateways, the designated area agency in her geographic region. In July 2021, Gateways terminated a subset of those waiver services, the so-called "adult foster care services," after Taranov's former adult foster care provider resigned. The complaint describes adult foster care services as a complex array of services that include coordination and management of all aspects of Taranov's daily life, including the hiring, training, and supervision of personal caregivers who tend to Taranov's needs 24/7. Gateways proposed to cover a substitute set of services that it deemed comparable to adult foster care services. Taranov, through her guardian, rejected this proposal, deeming it inadequate to allow her to safely remain in her home. Meanwhile, another individual has stepped in to perform the same duties as Taranov's former adult foster care provider. Because Gateways has not paid for those services, Taranov has been burdened with mounting debt to the new provider. Gateways, however, has continued to pay for Taranov's personal caregivers.

Despite receiving notice from Gateways that she had the right to appeal the termination of her adult foster care services to DHHS, Taranov has not done so. Instead, through her adult daughter and ex-husband as next friends, Taranov filed this action in November 2021 against Gateways, Gateways' President and CEO Sandra Pelletier, and Gateways' Senior Director of Family and Participant-Directed Services Mindy Huckins.

Plaintiff subsequently amended her complaint to add as defendants DHHS Commissioner Lori Shibinette and DHHS Director of Developmental Services Sandy Hunt, who are sued in their official capacities only. The complaint asserts a variety of federal claims pursuant to 42 U.S.C. § 1983, including a denial of prompt medical assistance in violation of 42 U.S.C. § 1396a(a)(8), a denial of Taranov's right to choose her preferred medical provider in violation of 42 U.S.C. § 1396a(a)(23), violations of her constitutional due process and equal protection rights, and discrimination claims under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 et seq. In addition, Taranov asserts a breach of contract claim against the DHHS defendants.

Following a preliminary review of the complaint, I dismissed Taranov's disability discrimination claims against the Gateways defendants for failure to state a claim. The DHHS defendants have now moved for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction on the ground that the claims against them are not ripe for determination. Taranov objects.

## II.   <u>STANDARD OF REVIEW</u>

When subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (cleaned up). Thus, if a plaintiff sues

in federal court, the burden to establish jurisdiction is on the plaintiff. See id.

In determining whether the plaintiff has met her burden, I must "take as

true all well-pleaded facts" in the complaint and "draw all reasonable

inferences" in her favor. Fothergill v. United States, 566 F.3d 248, 251 (1st

Cir. 2009).

### III.   ANALYSIS

The DHHS defendants argue that the claims against them should be

dismissed for lack of subject matter jurisdiction because they are not ripe for

review. I disagree.

The ripeness doctrine serves "to prevent the courts, through avoidance

of premature adjudication, from entangling themselves in abstract

disagreements" in violation of Article III's "case or controversy" requirement.

Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89

(1st Cir. 2013) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)).

The core question is "whether the facts alleged, under all the circumstances,

show that there is a substantial controversy, between parties having adverse

legal interests, of sufficient immediacy and reality to warrant" judicial

review. Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey, 844

F.3d 318, 326 (1st Cir. 2016) (quoting MedImmune, Inc. v. Genentech, Inc.,

549 U.S. 118, 127 (2007)). In accordance with these principles, a plaintiff

must allege facts sufficient to show that the issues raised are (1) "fit" for

judicial review and (2) that she will suffer hardship if review is denied. Reddy v. Foster, 845 F.3d 493, 501 (1st Cir. 2017).

The fitness element concerns "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 536 (1st Cir. 1995) (cleaned up). This analysis typically entails consideration of "finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." Id. at 535. The hardship element looks at "whether the challenged action creates a direct and immediate dilemma for the parties." Sindicato Puertorriqueño de Trabajadores v. Fortuno, 699 F.3d 1, 9 (1st Cir. 2012) (cleaned up). Generally, "the greater the hardship, the more apt a court will be to find ripeness." Ernst & Young, 45 F.3d at 536.

The DHHS defendants argue that the claims against them are not fit for judicial review because they necessarily depend on facts that can be developed only by appealing the area agency's termination decision to DHHS. Because Taranov has chosen to forego an administrative appeal, the argument goes, her claims are based on uncertain and contingent events – namely, how DHHS would resolve her dispute with Gateways. The fitness argument thus boils down to a contention that Taranov's failure to exhaust

her administrative remedies renders her claims unripe. This argument is unpersuasive for several reasons.

First, it is well-settled that absent a statutory provision to the contrary, administrative exhaustion is not a prerequisite to suit under § 1983. See Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 523 (1990); Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 516 (1982). Like her constitutional claims, Taranov's statutory claims are not subject to the exhaustion requirement. See Waskul v. Washtenaw Cnty. Cmty. Mental Health, 979 F.3d 426, 445 (6th Cir. 2020) (collecting cases from other circuits and agreeing with them that the Medicaid Act does not require exhaustion of state administrative remedies); 28 C.F.R. § 35.172(d) (specifying that exhaustion is not required under Title II of the ADA). The First Circuit has expressly rejected the argument that a plaintiff's failure to exhaust administrative remedies before filing a § 1983 suit renders the claims unripe. See Exeter-W. Greenwich Reg'l Sch. Dist. v. Pontarelli, 788 F.2d 47, 54 (1st Cir. 1986).

To the extent the DHHS defendants argue that the termination of Taranov's adult foster care services nonetheless lacks finality because DHHS had no opportunity to weigh in on the termination, their argument also fails. Defendants are correct that the finality of the challenged agency action is part of the fitness inquiry. See W.R. Grace & Co.--Conn. v. U.S. E.P.A., 959 F.2d 360, 364-65 (1st Cir. 1992). But the finality concept in the ripeness

analysis is distinct from the exhaustion requirement: "[T]he finality

requirement is concerned with whether the initial decisionmaker has arrived

at a definitive position on the issue that inflicts an actual, concrete injury;

the exhaustion requirement generally refers to administrative and judicial

procedures by which an injured party may seek review of an adverse decision

and obtain a remedy if the decision is found to be unlawful or otherwise

inappropriate." Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of

Johnson City, 473 U.S. 172, 193 (1985), overruled in part on other grounds by

Knick v. Twp. of Scott, Pa., 139 S. Ct. 2162 (2019). Applying these principles,

I conclude that the termination of Taranov's adult foster care services is

sufficiently final for her claims to be ripe.

DHHS has delegated to area agencies the initial decision-making

authority regarding the termination of services for ABD Waiver participants.

See N.H. Code Admin. R. He-M 522.16. According to the complaint, Gateways

arrived at a definitive position on the coverage for Taranov's adult foster care

services when it sent her a termination notice. That action inflicted an actual,

concrete injury on Taranov: Once the termination took effect, Gateways

refused to pay for her adult foster care services, which caused Taranov to

become indebted to her provider. Therefore, the termination is sufficiently

final to ensure that judicial review is not premature.

That DHHS could reverse the termination if it disagreed with the Gateways' decision on appeal does not defeat the finality of that decision. The only analogous cases that the DHHS defendants cite in support of their argument are distinguishable. In those cases, there was a pending application or appeal to the state agency, which underscored the lack of finality. See Richardson by Carlin v. Hamilton, 2:17-cv-00134-JAW, 2018 WL 1077275, at *4-5 (D. Me. Feb. 27, 2018) (plaintiff's claim challenging a state administrative penalty found not fit for review because the penalty was stayed pending an administrative appeal through which the penalty could be reversed); Kushi v. Romberger, 543 F. App'x 197, 199-201 (3d Cir. 2013) (holding that claims against a state agency were not ripe because the state agency did not deny the plaintiff's application but only requested additional documentation). By contrast, it is undisputed that Taranov did not avail herself of the administrative appeal process, so there are no pending matters related to her ABD Waiver services before DHHS.

The DHHS defendants' argument that they have done nothing yet that could give rise to liability in this action likewise rings hollow. A fair reading of the complaint suggests that Taranov is alleging that the state has an affirmative obligation to ensure that ABD Waiver services are provided and that the state can be liable when its contractor (Gateways) fails to fulfill that

obligation.[1] Because Taranov's claims do not depend on uncertain or contingent events that may not materialize and the challenged decision is sufficiently final, her claims are fit for judicial review.

The hardship element of the ripeness test is also satisfied in this case. The complaint alleges that the termination of Taranov's adult foster care services has not only resulted in indebtedness to her provider but has increased the risk that Taranov will have to be institutionalized. To be sure, had Taranov decided to pursue an administrative appeal within 30 days of receiving her termination notice, her services and payments would have continued until DHHS reached a decision on the appeal. See N.H. Code Admin. R. He-M 522.18(g)(1). But the DHHS defendants have not represented that they would allow Taranov to take a late appeal, let alone whether they would restore her prior benefits on an interim basis if she filed an appeal at this time. Accordingly, construing the complaint's allegations in the light most favorable to Taranov, I conclude that there is "a direct and immediate dilemma" that justifies judicial review. See Fortuno, 699 F.3d at 9 (cleaned up).

---

[1]      The viability of Taranov's theory of liability or the adequacy of her allegations that the DHHS defendants' own actions or omissions are responsible for her injuries cannot be litigated in a motion to dismiss on ripeness grounds. If the DHHS defendants wish to present those arguments, they should file a motion to dismiss for failure to state a claim.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, I conclude that the claims against the DHHS defendants are ripe for review and deny their motion to dismiss for lack of subject matter jurisdiction (Doc. No. 34). The clerk of court is directed to schedule a status conference with the parties in this matter. Until the status conference is held, the deadline to answer the complaint shall be stayed and no further filing by any party shall be made.

SO ORDERED.

<u>/s/ Paul J. Barbadoro</u>
Paul J. Barbadoro
United States District Judge

February 1, 2023

cc:     Counsel of record